DAVID R. ZARO (BAR NO. 124334)
MICHAEL R. FARRELL (BAR NO. 173831)
MATTHEW D. PHAM (BAR NO. 287704)
ALLEN MATKINS LECK GAMBLE
  MALLORY & NATSIS LLP
865 South Figueroa Street, Suite 2800
Los Angeles, California 90017-2543
Phone:  (213) 622-5555
Fax:  (213) 620-8816
E-Mail:  dzaro@allenmatkins.com
        mfarrell@allenmatkins.com
        mpham@allenmatkins.com

Attorneys for Plaintiff
GEOFF WINKLER, RECEIVER

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEOFF WINKLER, Receiver,<br><br>       Plaintiff,<br><br>    vs.<br><br>CHARLES R. GRIMM, an individual;<br>BLUE PACIFIC BIO-ENERGY, INC., a<br>California corporation; GRIMM<br>INVESTMENTS, LLC, a California<br>limited liability company; and DOES 1–<br>10, inclusive,<br><br>      Defendants. | Case No.  2:22-cv-05735-FMO-AJR<br><br>**STIPULATION FOR ORDER<br>APPROVING SETTLEMENT<br>AGREEMENT** |

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

The following stipulation (the "Stipulation") is entered into by and between the following parties, through their respective counsel: (1) plaintiff Geoff Winkler (the "Receiver"), the Court-appointed permanent receiver for Essex Capital Corporation ("Essex") and its subsidiaries and affiliates (collectively, with Essex, the "Receivership Entities" or "Entities"), on the one hand, and (2) defendants Charles R. Grimm, Blue Pacific Bio-Energy, Inc., and Grimm Investments, LLC (collectively, "Defendants," and, together with the Receiver, the "Parties"), on the other hand.  This Stipulation is based on the following recitals:

## **RECITALS**

1.      On December 21, 2018, the Receiver was appointed as the permanent receiver for the Receivership Entities in the above-captioned civil action (the "SEC Action") pursuant to an *Order Regarding Preliminary Injunction and Appointment of a Permanent Receiver* (the "Appointment Order").  *See* SEC Action ECF No. 66. Pursuant to the Appointment Order, the Receiver was vested with exclusive authority and control over the Receivership Entities and their assets (the "Receivership Assets").  *See id.*  On September 9, 2019, in the SEC Action, the Court entered its *Order Regarding Permanent Injunction* (the "Permanent Injunction"), which reaffirmed the authority initially conveyed upon the Receiver under the Appointment Order.  *See* SEC Action ECF No. 113.

2.      Among other things, the Appointment Order and Permanent Injunction authorized, empowered, and directed the Receiver to:  (a) assume exclusive authority and control over all Receivership Assets; (b) enter into those agreements the Receiver deems necessary and advisable in discharging his duties as receiver; and (c) institute, compromise, adjust, appear in, intervene in, or become party to such actions or proceedings in state, federal, or foreign courts, which the Receiver deems necessary and advisable to (1) preserve or recover any Receivership Assets or (2) carry out his mandate under the Appointment Order and the Permanent Injunction.

3.      On November 12, 2020, in the SEC Action, this Court entered its *Order Granting Motion of Receiver, Geoff Winkler, for Authority to Establish Disgorgement Procedures and Undertake Disgorgement Efforts* (the "Disgorgement Procedures Order").  *See* SEC Action ECF No. 195.  The Disgorgement Procedures Order authorized the Receiver to, among other things, commence litigation against investors in the Receivership Entities whom the Receiver alleged to have realized a net profit from such investments, which the Receiver contends are the proceeds of a Ponzi investment scheme and therefore Receivership Assets subject to disgorgement.  The Disgorgement Procedures Order also limited the Receiver's unilateral ability to settle claims below a certain recovery threshold, absent further order of the Court.

4.      On August 12, 2022, the Receiver filed a complaint titled *Complaint for Fraudulent Transfer* (the "Complaint"), ECF No. 1, against Defendants, commencing the above-captioned civil action.  The Complaint alleged a claim for relief against Defendants for the avoidance and recovery of fraudulent transfers based on actual fraud and sought to recover alleged Ponzi-scheme profits from Defendants.  The Complaint originally alleged that Defendants received net profits in the amount of $1,161,852.24 from the Receivership Entities, in excess of the amounts paid to or value conferred upon the Entities.  On December 16, 2022, Defendants filed an answer to the Complaint disputing, among other things, the Receiver's methodology and claim.  ECF No. 20.

5.      On September 29, 2023, the Parties filed cross motions for summary judgment or partial summary judgment, ECF Nos. 30, 31, pursuant to which the Receiver reduced the amount sought to be disgorged to **$1,147,083.55** (the "Profit Amount").  Defendants acknowledged that the amount of transfers that it received from Essex, less the amount of transfers it made to Essex totaled the Profit Amount but otherwise disagreed with the Receiver's analysis, including whether there was a Ponzi scheme (in which case the Receiver could recover nothing) and whether the

Receiver improperly excluded from the calculation certain transfers that Defendants made to third parties, such that Defendants did not profit on their investments with Essex and instead lost at least $770,889.84 on those investments (in which case the Receiver could also potentially recover nothing).  Defendants also raised statute-of-limitations or statute-of-repose arguments that could have had the effect of barring the Receiver from recovering all or substantially all of the Profit Amount.

6.     Though the Receiver believes that he could have ultimately prevailed over Defendants' defenses, the Receiver is mindful of (a) the risk that Defendants' success on their defenses could have resulted in the Receiver recovering nothing and (b) the cost of further litigation for the Receiver in an "all-or-nothing" case, including moving forward with a trial.  These prospective costs, when compared to the amount in controversy, militate in favor of settlement.

7.     The Parties recommenced settlement negotiations and successfully reached a tentative agreement to settle on March 11, 2024, now memorialized in the fully executed *Settlement Agreement and Mutual Release* (the "Settlement Agreement") appended hereto as **Exhibit 1**.  Pursuant to the terms of the Settlement Agreement, after approval by this Court, Defendants will make a payment to the Receiver in the amount of **$390,000.00** (the "Settlement Sum") in full satisfaction of the Receiver's claim, and, after the Receiver's receipt of the payment, the Parties will stipulate to the dismissal of this action, with prejudice.

8.     Given the cost and uncertainty associated with litigating the Receiver's claim, particularly in light of the fact that certain of Defendants' defenses could result in an "all-or-nothing" case, the Receiver has determined, in his reasonable business judgment, that settlement in that matter is proper, and that the Settlement Sum reflects an appropriate return of funds in connection with the Receiver's pending claim.

9.     Defendants likewise believe that, given the amount in controversy in this action, and the cost and uncertainty associated with defending against the Receiver's claim, settlement in that matter is appropriate.

10.    The Parties therefore jointly request that this Court enter an order approving the Settlement Agreement and authorizing the Parties to perform their respective obligations as provided therein.

## **STIPULATION**

Based on the foregoing, and subject to this Court's approval, the Parties stipulate and agree as follows:

1.     The Parties jointly request that the Court approve the Settlement Agreement in its entirety;

2.     Provided the Settlement Agreement is approved, the Parties further jointly request that the Court authorize the Parties to perform their respective obligations as set forth in the Settlement Agreement; and

3.     Provided the Settlement Agreement is approved, and pursuant to *Kokkonen v. Guardian Life Insurance Co. of America*, 511 U.S. 375, 381–82 (1994), and the terms of the Settlement Agreement, this Court shall retain exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of the Settlement Agreement.

Dated:  April 4, 2024

ALLEN MATKINS LECK GAMBLE
  MALLORY & NATSIS LLP
DAVID R. ZARO
MICHAEL R. FARRELL
MATTHEW D. PHAM


By:_____ */s/ Matthew D. Pham*
        MATTHEW D. PHAM
        Attorneys for Plaintiff
        GEOFF WINKLER, RECEIVER

Dated:  April 4, 2024

BARNES & THORNBURG LLP
PAUL LAURIN
JONATHAN J. BOUSTANI

By:_____ /s/ Paul Laurin
PAUL LAURIN
Attorneys for Defendants
CHARLES R. GRIMM, BLUE
PACIFIC BIO-ENERGY, INC., and
GRIMM INVESTMENTS, LLC

## SIGNATURE CERTIFICATION

In accordance with Civil Local Rule 5-4.3.4(a)(2)(i), the filer hereby attests that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

Dated:  April 4, 2024

ALLEN MATKINS LECK GAMBLE
MALLORY & NATSIS LLP
MATTHEW D. PHAM

By:_____ /s/ Matthew D. Pham
MATTHEW D. PHAM
Attorneys for Plaintiff
GEOFF WINKLER, RECEIVER

# EXHIBIT 1

**Exhibit 1**
**Page 7**

<u>**SETTLEMENT AGREEMENT AND MUTUAL RELEASE**</u>

This Settlement Agreement and Mutual Release (this "<u>Agreement</u>"), dated as of April 2nd 2024 (the "<u>Effective Date</u>"), is made by and between (1) Geoff Winkler (the "<u>Receiver</u>"), solely in his capacity as the court-appointed permanent receiver for Essex Capital Corporation ("<u>Essex</u>") and its subsidiaries and affiliates (collectively, with Essex, the "<u>Receivership Entities</u>") in connection with the Securities and Exchange Commission's (the "<u>Commission</u>") enforcement action styled as *SEC v. Ralph Iannelli, et al.*, pending in the United States District Court for the Central District of California (the "<u>District Court</u>") as Case No. 2:18-cv-05008 (the "<u>Enforcement Action</u>" or "<u>EA</u>"), on the one hand, and (2) Charles R. Grimm, an individual; Blue Pacific Bio-Energy, Inc., a California corporation; and Grimm Investments, LLC, a California limited liability company (collectively, "<u>Defendants</u>"), on the other hand. Collectively, the Receiver and Defendants are sometimes referred to herein as the "<u>Parties</u>" or individually as a "<u>Party</u>".

<u>**RECITALS**</u>

A.      On June 15, 2018, the Commission commenced the Enforcement Action by filing its *Complaint*, EA ECF No. 1, in the District Court against defendants Ralph T. Iannelli, Jr. ("<u>Iannelli</u>") and Essex.

B.      On December 21, 2018, the Receiver was appointed as the permanent receiver for the Receivership Entities in the Enforcement Action, pursuant to the District Court's *Order Regarding Preliminary Injunction and Appointment of a Permanent Receiver* (the "<u>Appointment Order</u>"), EA ECF No. 66.  The Appointment Order vested the Receiver with exclusive authority and control over the Receivership Entities, including their bank accounts, assets, and books and records (collectively, the "<u>Receivership Assets</u>"), and assigned him certain duties including, but not limited to, marshalling and preserving any Receivership Assets.

C.      On September 9, 2019, the District Court entered its *Order Regarding Permanent Injunction* (the "<u>Permanent Injunction</u>"), EA ECF No. 113, in the Enforcement Action, which reaffirmed the powers and authority initially conferred upon the Receiver pursuant to the Appointment Order.

D.      In accordance with his rights and duties under the Appointment Order and the Permanent Injunction, the Receiver conducted an investigation and accounting of funds transferred into and out of the Receivership Entities, including with respect to amounts received from and paid to investors in and creditors of any Receivership Entities.  Among other things, the Receiver concluded, on the basis of his investigation and accounting, that the business and financial activities of the Receivership Entities bore the hallmarks of a Ponzi investment scheme.

E.      On November 12, 2020, the District Court entered its *Order Granting Motion of Receiver, Geoff Winkler, for Authority to Establish Disgorgement Procedures and Undertake Disgorgement Efforts* (the "<u>Disgorgement Procedures Order</u>"), EA ECF No. 195.  Pursuant to the Disgorgement Procedures Order, the Receiver was authorized to commence disgorgement efforts, including litigation in the District Court, against investors and other creditors whom he

Error! Unknown document property name. Error! Unknown document property name.
Error! Unknown document property name. Error! Unknown document property name./4-2-24/Error! Unknown document property name./Error! Unknown document property name.

Error! Unknown document property name.

**Exhibit 1**
**Page 8**

determined profited as a result of their investments in or other monetary contributions to the Receivership Entities.

F.      Based upon his investigation and accounting, the Receiver determined that during all periods relevant to his prospective claims for the avoidance and recovery of fraudulent transfers, Defendants collectively received a net amount of $1,161,852.24 (the "Original Profit Amount") from the Receivership Entities, in excess of any amounts paid to or value conferred upon the Receivership Entities by Defendants (collectively, the "Transfers").  The Receiver thereafter demanded return of the Original Profit Amount from Defendants.  Defendants disputed the Receiver's analysis and conclusions, including whether there was a Ponzi scheme, and asserted certain defenses to the Receiver's demand, including, without limitation, a defense that Defendants did not profit on their investments with the Receivership Entities and instead lost at least $770,889.84 on those investments.

G.      On the basis of the Receiver's initial determination, as referenced in Recital F above, that Defendants had received profits paid from what he contended was a Ponzi investment scheme, on August 12, 2022, the Receiver commenced the action styled *Winkler v. Grimm, et al.*, pending in the District Court as Case No. 2:22-cv-05735 (the "Disgorgement Action" or "DA").  In the *Complaint for Fraudulent Transfer* (the "Complaint"), DA ECF No. 1, in the Disgorgement Action, the Receiver alleged a claim for relief against Defendants for the avoidance and recovery of fraudulent transfers based on actual fraud.  On December 16, 2022, Defendants filed an answer to the Complaint disputing, among other things, the Receiver's methodology and claim.  DA ECF No. 20.

H.      On May 24, 2023, the Parties participated in a mandatory settlement conference before the Honorable Alexander F. MacKinnon.  The Parties did not reach an agreement to settle the Disgorgement Action at that settlement conference.

I.      On September 29, 2023, the Parties filed cross motions for summary judgment or partial summary judgment, DA ECF Nos. 30, 31, in which the Receiver reduced the amount sought to be disgorged to $1,147,083.55 (the "Profit Amount").  Those motions were taken under submission by the District Court on October 27, 2023.

J.      A trial in the Disgorgement Action was scheduled to begin on January 9, 2024, DA ECF No. 29.  However, by stipulation approved by the District Court, the start date for the trial was continued to March 19, 2024, to allow the Parties to complete a second settlement conference, DA ECF Nos. 39, 40.

K.      On January 5, 2024, the Parties participated in a second settlement conference, this time before the Honorable Stephanie S. Christensen.  The second settlement conference did not result in the Parties reaching an immediate agreement to settle the Disgorgement Action.

L.      Following the conclusion of the second settlement conference, the Parties began to meet and confer regarding their pretrial requirements, during which the Parties stipulated to the trial being a nonjury trial.  The District Court approved the Parties' stipulation and continued the start of a bench trial in the Disgorgement Action to May 13, 2024.  DA ECF Nos. 45, 46.  Thereafter, the Parties engaged in further settlement discussions.

Error! Unknown document property name. Error! Unknown document property name.
Error! Unknown document property name. Error! Unknown document property name./4-2-24/Error! Unknown document property name./Error! Unknown document property name.

-2-

Error! Unknown document property name.

**Exhibit 1**
**Page 9**

M.      Having considered their respective claims and defenses, the Receiver and Defendants now wish to avoid the expense and uncertainty associated with further litigation, including a trial, and have agreed to settle and resolve all disputes, and release all claims arising from or relating to or arising in connection with the Disgorgement Action, including with respect to the Profit Amount, under the terms and conditions set forth herein.

## <u>AGREEMENT</u>

**NOW, THEREFORE**, in consideration of the foregoing recitals and the covenants, terms, and conditions hereinafter contained, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the undersigned agree as follows:

1.      <u>Court Approval</u>.  No more than fifteen (15) days after the Effective Date, the Receiver and Defendants shall apply to the District Court for approval of this Agreement, in the Enforcement Action or the Disgorgement Action, via stipulation, joint motion, or application. The Parties' respective obligations under this Agreement shall be conditioned upon the entry of an order of the District Court approving this Agreement.  In the event that the District Court does not enter an order approving this Agreement, this Agreement shall be null and void, and the Parties agree to confer and work cooperatively to schedule a new trial date and associated deadlines.

2.      <u>Payment</u>.  Defendants shall pay the Receiver the sum of **<u>$390,000.00</u>** (the "<u>Settlement Sum</u>"), in accordance with the terms set forth herein.  The Settlement Sum shall be paid in one (1) installment (the "<u>Settlement Payment</u>"), payable to the Receiver by no later than sixty (60) days after the entry of an order of the District Court approving this Agreement, provided that if any party in interest appeals approval of the order approving this Agreement, the Settlement Payment will be deferred and due sixty (60) days after disposition of the appeal and a final non-appealable order authorizing this Agreement.  The Settlement Payment shall be made via wire transfer, and the Receiver shall provide wiring instructions to Defendants' counsel of record.

3.      <u>Dismissal</u>.  No later than fifteen (15) days after the Receiver's receipt of the Settlement Payment described in Paragraph 2 above, the Parties shall file a joint stipulation in the District Court providing for the dismissal of the Disgorgement Action, with prejudice.

4.      <u>Confidentiality and Destruction of Records</u>.  Each Party agrees that any documents, records, or other materials or information produced by the other Party in connection with the Disgorgement Action shall be treated as confidential and shall not be produced or otherwise delivered to any non-Party absent the written permission of the other Party. Notwithstanding the foregoing, each Party shall delete or destroy all documents, records, or other materials or information produced by the other Party in connection with the Disgorgement Action within ten (10) days after the District Court's entry of an order dismissing the Disgorgement Action, with prejudice.

5.      <u>Mutual Release</u>.  On the condition that the Settlement Sum due under Paragraph 2 above has been paid in full and timely received by the Receiver, the Receiver, on the one hand, and Defendants, on the other hand, and each of them, for themselves and their affiliates, and their

Error! Unknown document property name. Error! Unknown document property name.
Error! Unknown document property name. Error! Unknown document property name./4-2-24/Error! Unknown document property name./Error! Unknown document property name.

-3-

Error! Unknown document property name.

**Exhibit 1**
**Page 10**

respective principals, agents, representatives, employees, attorneys, partners, members, managers, directors, officers, trustees, beneficiaries, successors and assigns, forever, irrevocably and unconditionally release and discharge one another, and their respective principals, agents, representatives, employees, attorneys, partners, members, managers, directors, officers, trustees, beneficiaries, heirs, executors, administrators, receivers, successors, assigns, and predecessors, of and from any and all claims, demands, debts, obligations, liabilities, costs, expenses, rights of action, causes of action, awards and judgments arising from or in connection with the Enforcement Action and the Disgorgement Action, including with respect to the Transfers, the Profit Amount, and Defendants' transactions with the Receivership Entities (including payments, if any, made to or from Iannelli), all of which claims are hereinafter referred to as the "Released Claims".

The Receiver and Defendants, individually and collectively, acknowledge and agree that the Released Claims may include claims of every nature and kind whatsoever, whether known or unknown, suspected or unsuspected, and further acknowledge that they may be presently unknown or unsuspected, and may be based upon hereafter discovered facts different from, or in addition to, those which they now know, or believe to be true.  Nevertheless, the Parties agree that the foregoing releases shall be and remain effective in all respects, notwithstanding such different or additional facts, or the discovery thereof, and further hereby expressly waive and relinquish any and all rights provided in California Civil Code § 1542, which provides as follows:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

The Receiver and Defendants expressly waive and release any rights and benefits that they have or may have under any similar law or rule of any other jurisdiction pertaining to the matters released herein.  It is the intention of the Parties through this Agreement and with the advice of counsel to fully, finally, and forever settle and release the claims and disputes existing between them as provided herein, known or unknown.  The releases herein given shall be and remain in effect as full and complete releases of all such matters notwithstanding the discovery of any additional claims or facts relating thereto.

6.     <u>Voluntary Signing</u>.  Each of the Parties has executed this Agreement without any duress or undue influence.

7.     <u>Independent Counsel</u>.  Each of the Parties acknowledge and agree that it has been represented by independent counsel of its own choice throughout all negotiations which preceded the execution of this Agreement, that it has executed and approved of this Agreement after consultation with said counsel, and that it shall not deny the validity of this Agreement on the ground that such Party did not have the advice of legal counsel.

Error! Unknown document property name. Error! Unknown document property name.
Error! Unknown document property name. Error! Unknown document property name./4-2-24/Error! Unknown document property name./Error! Unknown document property name.

-4-

Error! Unknown document property name.

**Exhibit 1**
**Page 11**

8.      <u>Governing Law and Venue</u>.  This Agreement shall in all respects be interpreted, enforced, and governed by and under the laws of State of California, and subject to the exclusive jurisdiction of the District Court.

9.      <u>Construction and Interpretation</u>.  The headings in this Agreement are inserted for convenience only and will not be deemed a part of the Agreement for construction or interpretation purposes.  The Parties expressly declare that they each participated in the negotiation of this Agreement, and that therefore no ambiguities in this Agreement may be resolved in favor of one Party because the other Party was the drafter.  No Party is the designated drafter of this Agreement.

10.     <u>No Assignment</u>.  The Parties represent that they have not assigned, transferred, or purported to assign or transfer to any person or entity any claims, demands, liabilities, damages, actions or causes, suits, or controversies of any kind and every nature that are released herein, and no other person or entity has any interest in any such claims, demands, liabilities, damages, actions or causes, suits, or controversies of any kind and every nature that are released herein, <u>provided</u>, <u>however</u>, that the Receiver shall not be barred from assigning his or the Receivership Entities' rights under this Agreement after the Effective Date, provided the assignment is approved by order of the District Court.

11.     <u>Authority to Enter Into Agreement</u>.  Each Party represents and warrants that its respective signatory to this Agreement is fully authorized to enter into this Agreement on such Party's behalf and to legally bind such Party to this Agreement, except that the Receiver's authority to enter into this Agreement is subject to the approval of the District Court.

12.     <u>No Admission of Liability</u>.  The Agreement does not constitute, nor shall it be construed as, an admission or concession by any of the Parties for any purpose.  By executing this Agreement, none of the Parties admits wrongdoing, liability, or fault in connection with, or to the merit of, the Enforcement Action or the Disgorgement Action, or the allegations asserted therein.

13.     <u>Waiver/Amendment</u>.  No breach of any provision of this Agreement can be waived unless in writing.  Waiver of any one breach of any provision of this Agreement is not a waiver of any other breach of the same or of any other provision of this Agreement.  Any amendment of this Agreement may be made only by written agreement signed by the Parties.

14.     <u>Fax and Counterparts</u>.  This Agreement may be executed in multiple counterparts, each of which shall be deemed to be an original, but all of which together will constitute one and the same Agreement.  Additionally, signature pages delivered via facsimile or email in portable document format (.pdf) shall be deemed original.

15.     <u>Acts in Furtherance of Purpose of Agreement</u>.  Each of the Parties shall execute all documents and do all acts necessary to carry out the purpose of this Agreement.

16.     <u>Attorneys' Fees and Costs</u>.  The Parties shall each bear their own costs and attorneys' fees, including those incurred in connection with the negotiation and documentation of this Agreement and in connection with the Parties' efforts to obtain District Court approval thereof.  If any proceeding, action, suit, or claim is undertaken to interpret or enforce this

**Error! Unknown document property name. Error! Unknown document property name.**
**Error! Unknown document property name. Error! Unknown document property name./4-2-24/Error! Unknown document property name./Error! Unknown document property name.**

-5-

**Error! Unknown document property name.**

**Exhibit 1**
**Page 12**

Agreement, the prevailing Party shall be entitled to recover from the other Party any reasonable attorneys' fees and costs incurred in connection with such dispute.

17.    <u>Notices</u>.  Notices to be provided hereunder shall be effective if sent to the following:

**<u>To Defendants</u>**:

Charles R. Grimm, et al.
1377 East Valley Road
Santa Barbara, California 93108

<u>With a copy to</u>:
Paul Laurin, Esq.
Barnes & Thornburg LLP
2029 Century Park East, Suite 300
Los Angeles, California 90067
paul.laurin@btlaw.com


**<u>To the Receiver</u>**:

Geoff Winkler
American Fiduciary Services LLC
715 NW Hoyt Street #4364
Portland, Oregon 97208

<u>With a copy to</u>:
Matthew D. Pham, Esq.
Allen Matkins Leck Gamble Mallory & Natsis LLP
865 S. Figueroa Street, Suite 2800
Los Angeles, California 90017-2543
mpham@allenmatkins.com


In WITNESS WHEREOF, the undersigned execute this Agreement as of the Effective Date.


CHARLES R. GRIMM


By:  _____
      Charles R. Grimm

Error! Unknown document property name. Error! Unknown document property name.
Error! Unknown document property name. Error! Unknown document property name./4-2-24/Error! Unknown document property name./Error! Unknown document property name.

-6-

Error! Unknown document property name.

**Exhibit 1**
**Page 13**

Agreement, the prevailing Party shall be entitled to recover from the other Party any reasonable attorneys' fees and costs incurred in connection with such dispute.

17.     <u>Notices</u>.  Notices to be provided hereunder shall be effective if sent to the following:

**<u>To Defendants</u>**:

Charles R. Grimm, et al.
1377 East Valley Road
Santa Barbara, California 93108

<u>With a copy to</u>:
Paul Laurin, Esq.
Barnes & Thornburg LLP
2029 Century Park East, Suite 300
Los Angeles, California 90067
paul.laurin@btlaw.com

**<u>To the Receiver</u>**:

Geoff Winkler
American Fiduciary Services LLC
715 NW Hoyt Street #4364
Portland, Oregon 97208

<u>With a copy to</u>:
Matthew D. Pham, Esq.
Allen Matkins Leck Gamble Mallory & Natsis LLP
865 S. Figueroa Street, Suite 2800
Los Angeles, California 90017-2543
mpham@allenmatkins.com

In WITNESS WHEREOF, the undersigned execute this Agreement as of the Effective Date.

CHARLES R. GRIMM

By: _____
        Charles R. Grimm

Error! Unknown document property name..Error! Unknown document property name.
Error! Unknown document property name..Error! Unknown document property name./4-2-24/Error! Unknown document property name./Error! Unknown document property name.

-6-

Error! Unknown document property name.

**Exhibit 1**
**Page 14**

BLUE PACIFIC BIO-ENERGY, INC.

By: _____
    Charles R. Grimm, President


GRIMM INVESTMENTS, LLC

By: _____
    Charles R. Grimm, Manager


GEOFF WINKLER, solely in his capacity as
Court-appointed permanent receiver for Essex
Capital Corporation and its subsidiaries and
affiliates


By: _____
    Geoff Winkler, Receiver

Error! Unknown document property name.Error! Unknown
document property name.
Error! Unknown document property name. Error! Unknown
document property name./4-2-24/Error! Unknown document
property name./Error! Unknown document property name.    -7-

Exhibit 1
Page 15

Error! Unknown document property name.

BLUE PACIFIC BIO-ENERGY, INC.


By: _____
    Charles R. Grimm, President


GRIMM INVESTMENTS, LLC


By: _____
    Charles R. Grimm, Manager


GEOFF WINKLER, solely in his capacity as
Court-appointed permanent receiver for Essex
Capital Corporation and its subsidiaries and
affiliates

By: _____
    Geoff Winkler, Receiver

**Error! Unknown document property name. Error! Unknown document property name.**
**Error! Unknown document property name. Error! Unknown document property name./4-2-24/Error! Unknown document property name./Error! Unknown document property name.**

-7-

**Error! Unknown document property name.**

**Exhibit 1**
**Page 16**